## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA

ETHAN GEORGE HANSON,

       Plaintiff,

v.

EXPERIAN INFORMATION
SOLUTIONS, INC.,

       Defendant.

Case No. 1:23-cv-04564-MHC-CMS

## REPLY IN SUPPORT OF EXPERIAN INFORMATION SOLUTIONS, INC.'S MOTION TO COMPEL ARBITRATION

## **INTRODUCTION**

Arbitration must be compelled where: (1) the parties have entered into a valid agreement to arbitrate, and (2) the dispute at issue comes within the scope of the arbitration agreement. *Lambert v. Austin Ind.*, 544 F.3d 1192, 1195 (11th Cir. 2008). Where, as here, a contract has a valid delegation clause, broadly delegating all arbitrability issues to an arbitrator, the second question—Is the dispute arbitrable?—is for an arbitrator to resolve. *Henry Schein, Inc. v. Archer and White Sales, Inc.*, 139 S.Ct. 524, 527–30 (2019). Plaintiff does not challenge the enforceability of the delegation clause. Thus, the Court's task in resolving this motion is limited to answering whether there is a valid agreement to arbitrate between Plaintiff and EIS.

In opposition, Plaintiff does not contest the issue of contract formation. Instead, he admits that he has been enrolled in Experian credit monitoring since 2020 (*see* ECF No. 12-1 [Declaration of Ethan Hanson ("Hanson Decl.")], ¶ 2)—the very year that Mr. Smith attests he enrolled in such service. While Plaintiff says that he is not "aware" of, and does not "recall" seeing, an arbitration agreement when he enrolled, that is insufficient to create a triable issue of fact on contract formation under Georgia state law—which is precisely what this Court held in *Venisee v. Progress Residential, LLC*, CIVIL ACTION FILE NO. 1:21-CV-05218-MHC-WEJ, 2022 WL 18780109, at *6-*8 (N.D. Ga. Mar. 11, 2022), report and recommendation

adopted, 2022 WL 18780106 (N.D. Ga. Mar. 25, 2022) (Cohen, J.) (explaining that plaintiff's affidavit stating that he "does not recall receiving, reviewing, or signing the Arbitration Agreement" insufficient to create an issue of fact).  It also is the same conclusion recently reached in *Ferrell v. Experian Information Solutions, Inc.*, Case 8:23-cv-01353-JWH-DFM, 2024 WL 158103 (C.D. Cal. Jan. 11, 2024), a case in which the plaintiff there, represented by the same counsel here, filed the *identical* opposition brief to EIS's motion to compel arbitration.

Just as in *Ferrell*, the balance of Plaintiff's brief contains a vitriolic attack on EIS's corporate declarant, Dan Smith.  Yet, none of Plaintiff's objections to Mr. Smith's declaration—such as Mr. Smith was not physically present in the room when Plaintiff enrolled in CreditWorks so he does have personal knowledge as to her enrollment—is meritorious.  Regardless, like *Ferrell*, because Plaintiff here "admits that []he signed up for Experian's services," he thus concedes contract formation. *See Ferrell*, 2024 WL 158103, at *1.

Finally, Plaintiff argues that even if the Court considers EIS's evidence, it is insufficient to establish contract formation.  ECF No. 12 ("Opp.") at 23-26 (citing *Sgouros v. Transunion Corp.*, 817 F.3d 1029, 1034 (7th Cir. 2016)).  Not so.  *See Ferrell*, 2024 WL 158103, at *1.  The Seventh Circuit's decision in *Sgouros* is facially inapposite.  Unlike here, there was no mention of any contract, much less a

hyperlink to the terms, in the enrollment screen at issue in *Sgouros*, which were the dispositive facts of the case.  In addition to *Ferrell*, the relevant legal authority is this Court's recent decision in *Pipoly*, which performed an objective evaluation of the *same* CreditWorks enrollment process that Plaintiff followed here, and found that it:  (1) gave consumers "clear notice of the Terms and Conditions," and (2) "required [plaintiff] to 'affirmatively acknowledge the agreement before proceeding with' her transaction." *Pipoly v. Experian Information Solutions, Inc.*, No. 1:23-CV-925-MHC-CMS, 2023 WL 5184188, at *3 (N.D. Ga. Aug. 2, 2023), report and recommendation adopted, 2023 WL 5438171 (N.D. Ga. Aug. 21, 2023) (Cohen, J.).  Judge Thrash reached the *same* conclusion in *Tadic* in evaluating the *same* CreditWorks enrollment process. *Tadic v. Experian Information Solutions, Inc.*, 2019 WL 11499103, at *2 (N.D. Ga. Mar. 13, 2019).  *Pipoly* and *Tadic* are on-point and dispositive.  Yet, just as in *Ferrell*, Plaintiff here "does not grapple with the controlling caselaw at all." *Ferrell*, 2024 WL 158103, at *1.

The Motion to Compel Arbitration should be granted.

## ARGUMENT

## I.    THERE IS A VALID AGREEMENT TO ARBITRATE

Just as in *Ferrell*, Plaintiff argues that EIS's evidence "fails to counter the Plaintiff's vehement dispute that he never saw – much less assented to – any

agreement to strip his rights to a federal jury trial here."  Opp. at 9 (citing Hanson Decl., ¶¶ 2-6).  Like *Ferrell*, that is *not* what Plaintiff states in his declaration. Instead, he asserts that he does not "recall," and was not "aware," that when he enrolled in CreditWorks—which he admittedly did, *see* Hanson Decl., ¶ 2—he was agreeing to an arbitration agreement.  But as this Court held in *Venisee*, a plaintiff's affidavit stating that he "does not recall receiving, reviewing, or signing the Arbitration Agreement" insufficient to create an issue of fact on the question of contract formation.  *Venisee*, 2022 WL 18780109, at *6-*8.

After all, "[i]f a party could get out of a contract by arguing that []he did not read it, contracts would be meaningless."  *Rowe v. AT & T, Inc.*, C/A No. 6:13–cv–01206–GRA, 2014 WL 172510, at *8 (D.S.C. Jan. 15, 2014); *Hosseini v. Upstart Network, Inc.*, Civil Case No. 19-cv-704, 2020 WL 573126, at *5 (E.D. Va. 2020) (same); *Zaimi v. Neiman Marcus Grp., LLC*, 2022 WL 19569536, at *5 (C.D. Cal. Aug. 31, 2022) (same).  Because Plaintiff's lack of recollection does not rebut EIS's evidence on the issue of contract formation, the Court should find that there is a valid agreement to arbitrate.  *See Pipoly*, 2023 WL 5184188, at *3.

## II.  <u>PLAINTIFF'S EVIDENTIARY OBJECTIONS ARE GROUNDLESS</u>

As in *Ferrell*, Plaintiff brands Mr. Smith's declaration as "foundationless and speculative."  Opp. at 9.  It is neither.  Under Federal Rule of Civil Procedure

56(c)(4), "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). Federal Rule of Evidence 602 instructs that "[e]vidence to prove personal knowledge may consist of the witness's own testimony." Fed. R. Evid. 602. Corporate declarants, like Mr. Smith, can be *inferred* to have knowledge on behalf of the corporation as the corporation is meant to appear vicariously through its designated representative. *Valmonte v. Galena Biopharma, Inc.*, CIVIL ACTION NO. 2:16-CV-180-RWS, 2017 WL 7528556, at *19 (N.D. Ga. Aug. 29 2017). In the Eleventh Circuit, a court "is bound to accept statements based on personal knowledge as true, unless the context demonstrates otherwise." *Adams v. Unum Life Ins. Co. of America*, 508 F. Supp. 2d 1302, 1311 n.5 (N.D. Ga. 2007) (citing *Stewart v. Booker T. Washington Ins.*, 232 F.3d 844, 849 (11th Cir. 2000)).

Mr. Smith's declaration is admissible. As in *Adams*, he declares that he is the Director of Product Operations for ConsumerInfo.com, Inc. ("CIC") in Costa Mesa, California." ECF 9-1 [Declaration of Dan Smith ("Smith Decl.")], ¶ 1. He has been employed by CIC since January 2010. *Id*. As in *Adams*, his declaration is expressly based on his "own personal knowledge, including knowledge acquired in the course and scope of [his] job responsibilities and through the review of pertinent documents

maintained as business records by CIC in the course and scope of CIC's business, including Experian's internal records that store CreditWorks account information." *Id*. His "duties at CIC include supporting the consumer enrollment process into CreditWorks and related services." *Id*. These job duties "require that [he] be familiar with, among other things, how consumers enroll, the forms they must complete to enroll, as well as the Terms of Use governing such services." *Id*. He is "familiar with Experian's databases that store consumer enrollment information, such as the webpages a consumer would have encountered to complete their enrollment into CreditWorks, the personally identifiable information entered when enrolling, which links or buttons the consumer clicked on, and date and time of the consumer's acceptance of the Terms of Use." *Id*. He is "familiar with Experian's internal records that document consumers' ongoing use of their CreditWorks account, including when a consumer logs into their account or changes their account information, as well as any time a consumer receives an email or alert through their Creditworks membership." *Id*. "Based on [his] familiarity with the CreditWorks enrollment process and Experian's databases that store consumer account information, [he is] able to retrieve a consumer's CreditWorks membership information upon receipt of that consumer's personally identifiable information." *Id*. And, "[o]nce [he] locate[s] the consumer CreditWorks membership information,

[he is] able to confirm the consumer's membership details, such as the date and time of enrollment, the version of the Terms of Use they agreed to, and the exact path the consumer encountered when completing their enrollment into CreditWorks." *Id*. "Plaintiff has not provided evidence rebutting [Mr. Smith's] testimony . . . or showing that [Mr. Smith] is not qualified[.]" *Adams*, 508 F. Supp. 2d at 1311 n.5.

After laying a proper foundation, Mr. Smith declares, "[b]ased upon [his] review of CIC's membership enrollment data maintained in the regular course of business, on February 10, 2020, Plaintiff enrolled in CreditWorks." *Id*., ¶ 3. He attaches "a true and correct copy" of the webform that Plaintiff completed to enroll in CreditWorks, *see id*., Ex. 1, the Terms of Use in effect when Plaintiff enrolled, *see id.*, ¶ 5, Ex. 2, and the Terms of Use in effect at the time Plaintiff filed this lawsuit, *see id*., ¶ 5, Ex. 3, which Plaintiff accepted through his continuous use of CreditWorks. *Id*., ¶ 5. The webform that Plaintiff completed to enroll in CreditWorks, and the Terms of Use governing his membership, fall within the categories of documents that Mr. Smith declares, through his job duties at CIC, he has personal knowledge of. "This is sufficient to establish that [he] has personal knowledge of the matters set forth in his declaration and the attached exhibits." *Johnson v. Southwest Recovery Services, Inc*., No. 3:22-cv-0242-X-BH, 2023 WL 1944127, at *3 (N.D. Tex. Jan. 24, 2023) 2023 WL 1944127 (N.D. Tex. Jan. 24,

2023), *report and recommendation adopted*, No. 3:22-CV-0242-X-BH, 2023 WL 1879999 (N.D. Tex. Feb. 10, 2023) (rejecting the same objections that Plaintiff makes here to EIS's corporate declarant); *Cordas v. Uber Technologies, Inc.*, 228 F. Supp. 3d 985, 988-989 (N.D. Cal. 2017) (same; rejecting the "litany of conclusory evidentiary objections against [Uber's witness's] declaration" who declared as to the company's online enrollment process).

None of Plaintiff's specific objections to Mr. Smith's declaration has merit. First, Plaintiff says that Mr. Smith lacks personal knowledge because he does not know Plaintiff, never met her, and was not physically present in the room with her when she enrolled. Opp. at 15. Plaintiff cites no legal authority to support such objection, and courts have roundly rejected it:

> Plaintiff further suggests that because Coyne did not actually witness what Plaintiff saw on his screen, Coyne's testimony presents — at best — mere speculation. Once again, the Court finds this argument unpersuasive. As explained above, Coyne based his testimony not only on his own personal knowledge of Zumper, but also on business records that reflect data about how Plaintiff created his account and what he would have seen.

*Melo v. Zumper, Inc.*, 439 F. Supp. 3d 683, 694 (E.D. Va. 2020). After rejecting Plaintiff's objection, *Melo* then notes that "[c]ourts across the country, facing issues of e-commerce contracts, have regularly and properly relied on these types of records [screenshots] and have consistently allowed testimony by those with

personal knowledge about what 'would have appeared' on a user's screen." *Id.* (citing *Meyer v. Uber Technologies, Inc.*, 868 F.3d 66, 70-72 (2d Cir. 2017) (relying on screenshots and a declaration that represented that Uber maintained records from which the company could see what a user had seen and done); *Cordas*, 228 F. Supp. 3d at 988-989 (same); *Fteja v. Facebook, Inc.*, 841 F. Supp. 2d 829, 834-35 (S.D.N.Y 2012) (same); *Worthington v. JetSmarter, Inc.*, 2019 WL 4933635, at *5-6 (S.D.N.Y. Oct. 7, 2019) (same); *Selden v. Airbnb, Inc.*, 2016 WL 6476934, at *2-5 (D.D.C. Nov. 1, 2016) (same).  Thus, as in *Ferrell*, Plaintiff's assertion that Mr. Smith's declaration regarding what Plaintiff "would have had to" do to enroll "are utterly speculative statements and wholly unsupported by any tangible evidence," *see* Opp. at 13, collides with an unbroken wall of precedent.

Second, Plaintiff says "Smith's position [with the company] does not and cannot validate what appeared on Plaintiff's unknown electronic device on February 10, 2020, when Plaintiff allegedly signed up for a CreditWorks account." Opp. at 12.  Not so.  To start, "[u]nfounded speculation as to an affiant's alleged lack of personal knowledge of the events in his affidavit does not render it inadmissible." *Nevada Dep't of Corr. V. Greene*, 648 F.3d 1014, 1019 (9th Cir. 2011).  But here, Mr. Smith declared that his job duties "require [him] [to] be familiar with, among other things, how consumers enroll, the forms they must complete to enroll, as well

as the Terms of Use governing such services." Smith Decl., ¶ 1. He also attests that he is "able to confirm the consumer's membership details, such as the date and time of enrollment, the version of the Terms of Use they agreed to, and the exact path the consumer encountered when completing their enrollment into CreditWorks." *Id*. He thus has foundation to attest as to the enrollment process that Plaintiff followed to enroll in CreditWorks. Moreover, given his position at the company, Mr. Smith's personal knowledge is to be inferred, *Valmonte*, 2017 WL 7528556, at *19, and it was *Plaintiff's burden* to put forth evidence "rebutting [Mr. Smith's] testimony," *Adams*, 508 F. Supp. 2d at 1311 n.5, which he has failed to do. Indeed, as in *Ferrell*, Plaintiff admits he enrolled in Experian credit monitoring, *see* Hanson Decl., ¶ 2, thus *confirming* the accuracy of Mr. Smith's declaration.

Third, Plaintiff says that "all of [Mr. Smith's] 'personal knowledge' comes from his review of unidentified 'pertinent documents' and 'Experian's internal records.'" Opp. at 12. That is a mischaracterization of Mr. Smith's declaration. Mr. Smith attests that, in addition to his review of CIC's business records, his personal knowledge is based upon his job duties with the company, which require him to be familiar with "how consumers enroll, the forms they must complete to enroll, as well as the Terms of Use governing such services." Smith Decl., ¶ 1. These are not "unidentified" records. These are specific categories of documents of which

he declares he has personal knowledge.  He also is "familiar with Experian's databases that store consumer enrollment information, such as the webpages a consumer would have encountered to complete their enrollment into CreditWorks, the personally identifiable information entered when enrolling, which links or buttons the consumer clicked on, and date and time of the consumer's acceptance of the Terms of Use." *Id*.  These also are specific business records—not "unidentified" documents.  And, he attests that he is "familiar with Experian's internal records that document consumers' ongoing use of their CreditWorks account, including when a consumer logs into their account or changes their account information, as well as any time a consumer receives an email or alert through their Creditworks membership"—again, specific company records.  *Id*.

Fourth, Plaintiff says that Mr. Smith "does not provide, or even so much as reference, any documents which substantiate his assertions about Plaintiff's interactions on any website, the nature of the allegedly accessed webforms, or the contents of any hyperlinks allegedly clicked by Plaintiff on February 10, 2020." Opp. at 13.  Not so.  Mr. Smith attaches the webform that Plaintiff completed to enroll in CreditWorks as Exhibit 1 to his declaration, and he attests, based upon his review of the company's "membership enrollment data," as to the date that Plaintiff enrolled, and the Terms of Use in effect at the time.  *Id*., ¶ 3.

Fifth, quoting *Oce v. Coleman*, 487 F. Supp. 548, 550 n.1. (N.D. Ill. 1980), Plaintiff contends that "[o]bviously, an affidavit which merely states that the affiant was 'apprised of certain information' should be given little, if any, weight."  Opp. at 10.  But Mr. Smith's declaration is not based upon what he has been "apprised of." Rather, he declares that, based upon his job duties and experience, he is personally familiar with the CreditWorks enrollment process, including the webforms a consumer must complete to enroll, the Terms of Use applicable to a CreditWorks membership, and the "internal records that document consumers' ongoing use of their CreditWorks account, including when a consumer logs into their account or changes their account information, as well as any time a consumer receives an email or alert through their Creditworks membership."  Smith Decl., ¶ 1.

Finally, Plaintiff relies upon *Austin v. Equifax Info. Servs., LLC*, No. 3:22-cv-707, 2023 WL 8646275 (E.D. Va. Dec. 13, 2023), Opp. at 17-21, but fails to apprise the Court that *Austin* is on appeal to the Fourth Circuit.  *Austin*, 3:22-cv-707, ECF No. 154.  *Austin* is an outlier—at odds with: (1) decisions in its own district, *see, e.g.*, *Melo*, 439 F. Supp. 3d 683, 693-96; *Hosseini*, 2020 WL 573126, *2-7, (2)  Fourth  Circuit  precedent  instructing  that  personal  knowledge  of  corporate declarants is *presumed*, *see*, *e.g.*, *Catawba Indian Tribe of South Carolina v. State of S.C.*, 978 F.2d 1334, 1342 (4th Cir. 1992), and (3) decisions from courts *upholding*

the *same* declarant's declaration.   *Johnson*, No. 3:22-cv-0242-X-BH, 2023 WL 1944127, at *3; *Salazar v. Experian Info. Sols., Inc.*, No. 4:22-cv-00598-HFS, 2023 WL 3529635, at *5 (W.D. Mo. May 15, 2023) (finding "persuasive the sworn affidavit from David Williams" in granting EIS's arbitration motion); *Pecoraro v. Experian Information Solutions, Inc.*, Case 9:23-cv-80789-RLR, 2023 WL 8525114 (S.D. Fla. Dec. 6, 2023), accepting Report and Recommendation in Case 9:23-cv-80789-RLR, 2024 WL 167391 (S.D. Fla. Jan. 16, 2024) (finding that EIS's corporate declarant (Mr. Williams):  (1) "is competent evidence to show that Plaintiff accepted the Terms of Service Agreements—and the relevant arbitration clause—that were in effect when he enrolled in CreditWorks" and (2) "had personal knowledge of the contents of the Terms of Service Agreements at the time of Plaintiff's enrollment, and every enrollee had to accept those terms before using the software").

Moreover, contrary to Supreme Court precedent, *Austin* expresses hostility towards arbitration.  There, EIS moved to compel arbitration because the plaintiff agreed to arbitrate his claims under the CreditWorks Terms of Use.  *Austin*, 2023 WL 8646275 at *1-2.  Like here, plaintiff admitted he was a CreditWorks member. *Id*. at *3. Nonetheless, the court ordered arbitration discovery, which took about six months to complete.  The court also ordered an in-court demonstration on how plaintiff enrolled in CreditWorks.  EIS responded, in full, to the discovery requests.

EIS produced verified interrogatory responses, verified supplemental interrogatory responses, and made a complete document production—encompassing 850 pages of documents—all of which are on file with the court (which this Court, if it is inclined to do so, can review).  *See* No. 3:22-cv-00707-REP (E.D. Va. Aug. 11, 2023) ("*Austin Doc.*"), ECF Nos. 70, 109-117.

EIS's discovery responses detailed the process by which EIS determined that the plaintiff i is a CreditWorks member, including a step-by-step explanation of the specific steps plaintiff took to enroll in CreditWorks. *See generally id.*, ECF No. 110 at 3, 9-10, 11, 25.  EIS's verified interrogatory responses also cited documents produced in discovery, including the public webpage that plaintiff landed on when he began the enrollment process; the webform plaintiff completed to enroll in CreditWorks, and the Terms of Use to which he agreed; the full set of data associated with the "sessionid" for plaintiff's May 2, 2020 enrollment visit (which reflects plaintiff's activity during that online session, including the time-stamp of when plaintiff accepted the Terms of Use); and plaintiff's usage of his CreditWorks membership.  *Id*.  The  result of such discovery is that it confirmed that EIS's declarant was accurate—namely, that plaintiff enrolled in CreditWorks on the very date and through the very process that the declarant attested to, and assented to the arbitration agreement in the Terms of Use. Moreover, EIS made its declarants

(Mr. Williams and Mr. Smith) both available for deposition, but plaintiff chose not to take those depositions. *Id*. at 7, 8, 24.

In opposing EIS's motion, plaintiff did cite *any* of the arbitration discovery he sought and obtained. Instead, he filed a procedurally improper "motion to strike" the corporate declarant's declaration, *id*. at ECF Nos. 105-06, which the district court granted because the declarant's Linkedin profile did not mention CreditWorks or arbitration. *Id*. at ECF Nos. 138; 139 at 76:6-9; 80:13-16. Thereafter, the Court ordered EIS to either file a motion for leave to file supplemental evidence in support of its motion to compel arbitration or to provide "[n]otice . . . with its alternative proposed course of action." ECF No. 138 at 2.

In response, EIS filed a notice that it did not intend to further supplement its Motion to Compel Arbitration "because the Motion has already been properly supplemented by evidence presently in the record." ECF No. 142 at 1. EIS explained that because the evidence, which included EIS's verified interrogatory responses and entire document production, was incorporated by reference in the parties' briefing on the motion to compel arbitration and related motion to strike, the evidence could properly be considered in resolving EIS's Motion to Compel Arbitration. *Id*. EIS's notice further specified the evidence it submitted in opposing the plaintiff's motion to exclude the declaration, providing

pin-cites to the evidence relied upon for the Court's ease of reference.  *Id*. at 2-4.

Thereafter, the court called a hearing during which it informed EIS that it was "not going to consider any of" the evidence already in the record and that the parties were "going to start all over again."  ECF No. 143 at 2:12-25, 18:18-19.  The court then *sua sponte* struck EIS's memorandum of law in support of the motion, and ordered EIS to file a "replacement" memorandum based upon only evidence that already had been submitted to the court.  *Austin*, 2023 WL 8646275 at *5; *see also Austin Doc.* No. 3:22-cv-00707-REP, ECF No. 144 at 2-4; ECF. No. 143 at 19: 7-15.  At that hearing, plaintiff's counsel stated that he intended to move to re-open arbitration discovery, which the court indicated it was inclined to allow, *id*. at ECF No. 143, at 20:6-19.  To cut off further unnecessary costs, EIS, in its "replacement" memorandum, opted to rely solely on the declaration of the corporate declarant that the court had struck—which EIS believes was contrary to Fourth Circuit and other precedent—advised that its motion must be denied (because the evidence supporting it was stricken); and, once denied, EIS intended to appeal that ruling to the Fourth Circuit, *id*., ECF No. 146, at 1, which EIS has done.

One year after it moved to compel arbitration in *Austin*—based upon a corporate witness declaration whose attestations were confirmed in discovery—the court denied the motion.  EIS submits that *Melo*, *Hosseini*, *Johnson*, *Meyer*, *Cordas*,

*Worthington*, and *Selden* (among other cases) are better-reasoned decisions than *Austin*, and adhere to established precedent regarding corporate declarants.

## III.    *SGOUROS* IS FACIALLY INAPPICABLE

In *Austin*, the court found that even if it considered the declaration of EIS's declarant, it would find that the design and content of the webform that consumers use to enroll in CreditWorks was "essentially the same as to the process" involved in *Sgouros*, and conclude that it was not enforceable. *Austin*, 2023 WL 8646275 at *8-*9. Plaintiff now urges this Court, contrary to its decision in *Pipoly* and Judge Thrash's decision in *Tadic*, to commit this same error of law.

In addition to being an outlier on the requirements for corporate declarant declarations, *Austin* is irreconcilable with *Pipoly* and *Tadic*, as well as decisions of courts throughout the country that also have evaluated the enrollment process into Creditworks, which found that "a reasonable user would have seen the notice and been able to locate the Terms of Use Agreement via the hyperlink." *Arciniega v. Experian Information Solutions, Inc.*, No. CV-23-00245-PHX-SPL, 2023 WL 6803084, at *3 (D. Ariz. Oct. 12, 2023); *Cimillo v. Experian Information Solutions, Inc.*, 21 CV 9132 (VB), 2023 WL 2473403, at *7 (S.D.N.Y. Mar. 13, 2023) (same); *Capps v. JPMorgan Chase Bank, N.A.*, 2023 WL 303099, at *4 (E.D. Cal. Apr. 21, 2023) (same); *Saucedo v. Experian Info. Sols., Inc.*, No. 1:22-cv-01584, 2023 WL

4708015, at *6 (E.D. Cal. July 24, 2023) (same); *Levy v. Experian Information Solutions, Inc.*, 2023 WL 2644352, at *7 (S.D.N.Y. Mar. 7, 2023) (same). Plaintiff ignores these cases, relying instead on *Austin* and its interpretation of *Sgouros*.

*Sgouros* is factually inapposite. There, the Seventh Circuit evaluated an online enrollment process that purported to bind consumers to a contract. Unlike here, however, the disclosure above the "I Accept" button stated that "a click on the button constituted assent for TransUnion to obtain access to the purchaser's personal information," without saying anything about "contractual terms," and without any indication that "the same click constituted acceptance of the Service Agreement." *Id*. at 1035–36. Nor did the webpage in *Sgouros* contain a hyperlink to the relevant agreement. *Id*. at 1036. In evaluating the CreditWorks enrollment process, this Court found that it: (1) gave consumers "clear notice of the Terms and Conditions," and (2) "required [plaintiff] to 'affirmatively acknowledge the agreement before proceeding with' her transaction." *Pipoly*, 2023 WL 5184188, at *3.[1]

## <u>CONCLUSION</u>

The motion to compel arbitration should be granted.

---

[1] Courts have reached the same conclusion evaluating the same website design at issue here, expressly distinguishing *Sgouros* on its facts. *See, e.g., Melo*, 439 F. Supp. 3d at 696; *Hosseini*, 2020 WL 573126, at *2-*7; *Meyer*, 868 F.3d at 70-72; *Cordas*, 228 F. Supp. 3d at 988-989; *Abukar*, 2023 WL 3394827, *1-*2.

Dated:  January 17, 2024                    Respectfully submitted,

*/s/ Grant Edward Lavelle Schnell*
Grant Edward Lavelle Schnell
Georgia Bar No. 106794
JONES DAY
1221 Peachtree Street N.E., Suite 400
Atlanta, Georgia 30361
Phone: (404) 581-8023
Email: gschnell@jonesday.com

*Attorney for Defendant*
*Experian Information Solutions, Inc.*

## **CERTIFICATE OF COMPLIANCE**

I hereby certify that the foregoing document has been prepared in accordance with the font type and margin requirements of Local Rule 5.1C of the Northern District of Georgia, using 14-point Times New Roman font, as approved by the Court.

Dated:  January 17, 2024

<div style="margin-left: 40%;">

*/s/ Grant Edward Lavelle Schnell*
Grant Edward Lavelle Schnell
Georgia Bar No. 106794

*Attorney for Defendant*
*Experian Information Solutions, Inc.*

</div>

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 17, 2024, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF.

*/s/ Grant Edward Lavelle Schnell*

Grant Edward Lavelle Schnell

*Attorney for Defendant*
*Experian Information Solutions, Inc.*